**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION**

| | | |
|---|---|---|
| **HORACE SAVOY, AND WIFE,** | § | |
| **TIFFANY SAVOY** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION 1:17-CV-00126** |
| | § | |
| **MINSTAR TRANSPORT, INC.,** | § | **JUDGE RON CLARK** |
| **RICHARD MCGOWLAN,** | § | |
| **KUBOTA TRACTOR** | § | |
| **CORPORATION AND MARUBENI** | § | |
| **TRANSPORT SERVICE CORP.** | § | |

**PLAINTIFFS' SECOND AMENDED COMPLAINT**

TO THE HONORABLE JUDGE OF THIS COURT:

COME NOW, **HORACE SAVOY, AND WIFE, TIFFANY SAVOY**, hereinafter referred to as Plaintiff, complaining of and about **MINSTAR TRANSPORT, INC., RICHARD MCGOWLAN, KUBOTA TRACTOR CORPORATION, MARUBENI TRANSPORT SERVICE CORP., KUBOTA MANUFACTURING OF AMERICA CORPORATION, KUBOTA MANUFACTURING CORP., KUBOTA NORTH AMERICA CORPORATION** and further complaining of **KUBOTA CORPORATION** (hereinafter sometimes collectively referred to as "Defendants") and in support hereof would show unto the Court as follows:

**1.00   PARTIES**

1.01   Plaintiffs are and have been resident citizens of the State of Texas at all material times and were husband and wife.

1.02   Defendant, **MINSTAR TRANSPORT, INC.,** has answered and appeared.

1.03   Defendant, **RICHARD MCGOWLAN**, has answered and appeared.

1.04   Defendant, **KUBOTA TRACTOR CORPORATION,** has answered and appeared.

1

1.05    Defendant, **MARUBENI TRANSPORT SERVICE CORP.**, has answered and appeared.

1.06    Defendant, **KUBOTA MANUFACTURING OF AMERICA CORPORATION**, is a domestic entity with its nerve center and corporate heaquarters located in Grapevine, Texas on "Kubota Drive" who is doing business in the State of Texas for the purposes of accumulating monetary profits; said Defendant may be served with this citation and petition by serving its registered agent for service of process CT Corporation System, 1999 Bryan Stree, Suite 900, Dallas, Texas 75201-3136.

1.07 Defendant, **KUBOTA MANUFACTURING CORP.**, is a domestic entity with its nerve center and corporate heaquarters located in Grapevine, Texas on "Kubota Drive" who is doing business in the State of Texas for the purposes of accumulating monetary profits; said Defendant may be served with this citation and petition by serving its registered agent for service of process CT Corporation System, 1999 Bryan Stree, Suite 900, Dallas, Texas 75201-3136.

1.08    Defendant, **KUBOTA NORTH AMERICA CORPORATION**, is a domestic entity with its nerve center and corporate heaquarters located in Grapevine, Texas on "Kubota Drive" who is doing business in the State of Texas for the purposes of accumulating monetary profits; said Defendant may be served with this citation and petition by serving its registered agent for service of process CT Corporation System, 1999 Bryan Stree, Suite 900, Dallas, Texas 75201-3136.

1.09    Defendant, **KUBOTA CORPORATION**, is a foreign entity who is doing business in the State of Texas for the purposes of accumulating monetary profits; said Defendant will be represented by counsel for Kubota Tractor Corporation and the undersigned remains hopeful he will accept service, but reportedly requires that it be served with process, Summons and this Complaint by serving it through the Hague Convention  at the following address:

Kubota Corporation
2-47m, Shitkitsuhigashi 1-chome,
Naniwa-ku, Osaka 556-8601 Japan

**2.00   JURISDICTION AND VENUE**

2.01    Damages in this personal injury case, exclusive of interest and costs, exceed the minimum jurisdictional limits of this court.    While the amount in controversy exceeds $75,000.00, jurisdiction does not exist in U.S. District Court because not all plaintiffs and all Defendants are residents of different states.    Further pleading, plaintiffs and one or more of the Defendants are resident citizens of the State of Texas.    Beecause one or more of the Kubota Defendants are resident citizens of the State of Texas by virtue of their corporate headquarters being located in Grapevine, Texas, diversity of jurisdiction does not exist.

2.02    Venue is proper in Jefferson County based on § 15.002 the Texas Civil Practice & Remedies Code as it is the county where all or a substantial part of the events or omissions giving rise to the claim occurred.

**3.00   STATEMENT OF FACTS**

3.01    This suit is necessary to collect a legal debt and damages due and owing your Plaintiff, **HORACE SAVOY,** arising from an incident occurring in Jefferson County, Texas on or about September 19, 2016 on College Street in Beaumont, Jefferson County, Texas at the business premises of Plaintiff's employer, Beaumont Tractor Company.    Specifially, a Kubota RTV driven by one of the Defendants herein struck Plaintiff, running over him and causing him to fall to the ground after the driver's foot become "stuck," ensnared, trapped and/or hung up in acceleration control or pedal within the operator's cab of the Kubota RTV causing "inadvertent acceleration" according to said driver, **RICHARD MCGOWLAN**.

3.02    On or about September 19, 2016, Defendants, **MINSTAR TRANSPORT, INC.** and its employee and agent, **RICHARD MCGOWLAN**, had transported a Kubota RTV from Georgia to Beaumont, Texas where the incident causing injuries to Plaintiff occurred.    As alleged

in its Notice of Removal, Defendant, **RICHARD MCGOWLAN**, had "*accidently gotten a foot stuck next to the throttle of an ATV when driving it off the trailer, resulting in inadvertently accelerating the ATV as it was coming off the 2nd level*" transport deck.  After striking and running over Plaintiff, the Kubota RTV with Defendant, **RICHARD MCGOWLAN'S**, foot "stuck" in fuel acceleration pedal, continued out of the trailer and hitting not one, but two other trailers as well as another Kubota RTV that had previously been off-loaded.

      3.03   The Kubota RTV was designed, manufactured, assembled, marketed and placed into the stream of commerce by Kubota Defendants, including Defendants **KUBOTA TRACTOR CORPORATION, KUBOTA MANUFACTURING OF AMERICA CORPORATION, KUBOTA MANUFACTURING CORP., KUBOTA NORTH AMERICA CORPORATION** and/or **KUBOTA CORPORATION** (sometimes collectively referred to as the "Kubota Defendants")

      3.04   Defendant, **KUBOTA TRACTOR CORPORATION**, instructed on the Bill of Lading that it be billed for the cost of transporting the RTV to its dealership in Beaumont, Texas, Beaumont Tractor Company, as its name is identified by the words "Bill To" and by paying for its transportation, caused the Kubota RTV to be placed into the stream of commerce.

      3.05   Defendant, **KUBOTA MANUFACTURING OF AMERICA CORPORATION**, generated the "Straight Bill of Lading" and the "Packing List" pertaining to the RTV that caused Plaintiff to become injured.

      3.06   Defendant, **KUBOTA MANUFACTURING CORP.** is identified on the Straight Bill of Lading as the "shipper" of the RTV that caused Plaintiff to become injured.

      3.07   Defendants **KUBOTA TRACTOR CORPORATION, KUBOTA MANUFACTURING OF AMERICA CORPORATION, KUBOTA MANUFACTURING CORP., KUBOTA NORTH AMERICA CORPORATION** and/or **KUBOTA CORPORATION** owned the Kubota RTV at the time it was placed into the stream of

commerce and at the of the incident made the basis of this litigation.

3.08   Defendants,   **KUBOTA   TRACTOR   CORPORATION,   KUBOTA MANUFACTURING OF AMERICA CORPORATION, KUBOTA MANUFACTURING CORP.,   KUBOTA   NORTH   AMERICA   CORPORATION** and/or **KUBOTA CORPORATION** as the  respective owning, designing, assembling, marketing, paying and/or shipping company each retained a right of control over the method, means and manner that the Kubota RTV would be shipped, including by selecting the transportation company, how the product was packaged or assembled and the conditions by which its products would be shipped, including whether or not it chose to take advantage of the Minstar's "Double Deck Transportation System."

3.09   The Kubota RTV was unreasonable dangerous and defective as designed in violation of Section 402a of the Second Restatement on Product Liablity insofar as the operator's compartment and/or accelerator pedal within the operator's compartment station was designed in such a way that a foreseeable user's foot could become  "stuck," trapped, ensnared or hung up causing or resulting in "inadvertent acceleration" as alleged by Defendants, which resulted in Plaintiff being hit by the Kubota RTV and Defendant, **RICHARD MCGOWLAN**, was operating the same.  A safer alternative design existed at the time the Kubota RTV was placed into the stream of commerce by the Kubota Defendants which would have eliminated or significantly reduced the risk of injury to operators of the Kubota RTV and others working or walking nearby, incliuding Plaintiff, **HORACE SAVOY**.  The Kubota Defendants, acting individually in some instances or in combination with another in others, designed, assembled, manufactured, marketed, loaded, shipped, paid for the shipping of the Kubota RTV and was negligent in doing so as allged hereinabove; alternatively, each of the Kubota Defendants had a right of control over said acts enabling or causing the Kubota RTV to be placed into the stream of commerce.

3.10    One or more of the aforesaid Kubota entities, acting singularly and/or in combination, marketed the Kubota RTV and in doing so made decisions regarding the identity, subject, conspicuity and/or content of warnings and/or instructions which they knew would be relied upon by consumers or users, including Defendant, **RICHARD MCGOWLAN**.  Each of the aforeseaid Kubota entities retained a right of control over the marketing, warning and/or instructing of the Kubota RTV and was negligent in failing to provide any warning that the foot of Defendant, **RICHARD MCGOWLAN**, could become "stuck," trapped, ensnared or hung up in, near or with the throttle and/or accelerator pedal such that inadvertent acceleration of the Kubota RTV could occur causing injury.  Further, said entities failed to provide any instruction to the consumers and users of the Kubota RTV, including Defendant, **RICHARD MCGOWLAN**, how to avoid the danger that Defendant, **RICHARD MCGOWLAN**, says occurred in causing the "inadvertent acceleration" and or running over of Plaintiff and the fall of Plainitff thereby.

3.11    The "accident process" started for the Kubota entities during the design phase of the subject Kubota RTV, including its failure to eliminate or significantly reduce the risk of the danger of foot entrapment during the design phase of the Kubota RTV in a way that the user or operator's foot would not become "stuck," trapped, ensared or hung up with the acceleration controls of the Kubota RTV such that "accidental acceleration" could occur, thereby making the Kubota RTV unreasonably dangerous and defective by design.  Further, there are no warnings of the danger of foot entrapment by its product or instructions regarding safe operation, loading, unloading and/or use of the Kubota RTV, including how to avoid the dangerous, making the product mismarketed.

3.12    More likely than not this "accident process" started for Defendant, **MINSTAR TRANSPORT, INC.**, months if not years before when Defendant, **MINSTAR TRANSPORT, INC.**, designed the "Double-deck System" and marketed it for hauling mobile equipment,

including the subject Kubota RTV.  In effort to secure the business of Defendants herein, Defendant **MINSTAR TRANSPORT, INC.**, marketed its Double Deck System as a "cost-savings" device allowing its van and shippers to load even more, higher and greater loads within the van, regardless of the safety of doing same or the harm or danger visited upon others who happened to be nearby, including your Plaintiff.  The Kubota Defendants and Defendant, **MARUBENI TRANSPORT SERVICE CORP.,** were hooked by the marketing schemes of Defendant, **MINSTAR TRANSPORT, INC.**, in effort to "save money" or enjoy higher profits regardless of the harm and dangers caused to others thereby.  Defendant, **MINSTAR TRANSPORT, INC.** advertises to its customers and clients, including Defendants, including advertising on its website, that significant costs savings can result from selecting and hiring out its "Double Deck Transport System."  Said advertising includes posing the following question and then answering it, implying that customers who choose its "Double Deck Transport System" realize a one-half cost savings:  "Do you get every other load hauled for half price and free of fuel surcharge? That's what we do for our customers all the time."

3.13    Defendant, **MARUBENI TRANSPORT SERVICE CORP.,** represented to the world, including the other Defendants herein, that it is a transportation logistics coordinator. Defendant, **MARUBENI TRANSPORT SERVICE CORP.,** provided the service of transportation logistics and coordination to the other Defendants herein and did so negligently which was a proximate cause the mobile equipment being loaded onto, shipped by the Kubota entities and transported on the 2nd or top level of the "Double Deck Transport System."  As a result, Defendant, **MARUBENI TRANSPORT SERVICE CORP.,** in their role as logistics coordinator, coordinated the van/trailer to be double-stacked with Kubota RTV's so that multiple shipments could be, including the Beaumont, Texas delivery as well as other deliveries west of Beaumont, Texas. Defendant, **MARUBENI TRANSPORT SERVICE CORP**, was negligent in selected the subject method of shipment for the subject merchandise which was unsafe and dangerous for the

reasons specified herein.  Said Defendant failed to ensure the load would be loaded and therefore unloaded in a safe manner, which would not cause injury to others, including Plaintiff.

3.14     However, the Minstar Double Deck Transportaion System was dangerous, defective and unsafe for its intended purposes as it pertains to loading, shipping and/or unloading mobile or rubber tired equipment, including the subject Kubota RTV, because it dictates that the operator, driver and unloader of the said equipment will unload the equipment with the unloader's body in a tortured position where he cannot sit safely in the operators compartment because of it's proximity just below the interior of the roof of the cargo van or trailer as is shown in the photograph of Defendant, **RICHARD MCGOWLAN**, taken shortly before the incident made the basis of this litigation:



3.15     Loading the Kubota RTV for shipment and transportation onto the top or 2nd level/deck inside the van/trailer was dangerous and created a trap that would be sprung at the time the operator attempted to off-load the RTV, and necessarily dictated the conditions by which the RTV would be off-loaded.

3.16     The design and marketing defects of the Kubota RTV alleged hereinabove taken singiularlry or in combination with the loading, shipping and having to unload the Kubota RTV from the top or 2nd level created created a dangerous "perfect storm" for Defendant, **RICHARD MCGOWLAN**, and resulted in him striking and running over Plaintiff, **HORACE SAVOY**, and knocking to the ground causing head injury, lacerated face, bi-lateral broken risks, cervical and lumbar spine injury and a broken ankle as alleged hereinabove.   This danger, combined with the hidden, latent and unknown danger that the operator's foot could become "stuck," ensnared, entangled and/or hung up with the accelerator's controls thereby causing "inadvertent acceleration," as alleged by Defendants, **RICHARD MCGOWLAN** and **MINSTAR TRANSPORT, INC**. were the proximate and/or producing cause of Plaintiff's injuries and/or damages.

3.17     Upon information and belief, the Kubota Defendants and Defendant, **MARUBENI TRANSPORT SERVICE CORP.**, evaluated the safety of transporting the RTV on 2nd or top deck of the "Double-Deck Transport System," but nevertheless made a conscious decision to continue with loading, shipping and causing the unloading of the Kubota RTV to be made from the top or 2nd level; alternatively, said Defendants should have done so and were negligent in allowing the same to occur.   Motivated by the cost-savings measures advertised, marketed, encouraged and/or incited by Defendants, **MINSTAR TRANSPORT, INC.**, the Kubota Defendants and   **MARUBENI TRANSPORT SERVICE CORP.** made the conscious decision to "double-stack" Kubota RTV's in the van, including the top or 2nd deck without due regard for the safety and well-being of the drivers and those working or walking nearby, including those required to off-load the RTV and Plaintiff.   Defendant, **MARUBENI TRANSPORT SERVICE CORP.**, should have coordinated the load and/or delivery better by loading the other cartons, parts and other Kubota components – components that were driven off – on the 2nd or top load deck and the rubber-tired equipment on the floor within the trailer.

3.18    The Kubota Defendants loaded the RTV and did so negligently as referenced hereinabove.  Said Defendants made a choice regarding how the producted designed, assembled, manufacturered, marketed, loaded and shipped would shipped, including whether it would be shipped in a "double-stack" configuration and was negligent in doing so which was a proximate cause of Plaintiffs' injuries and/or damages.

3.19    Further, the Kubota Defendants and Defendant, **MARUBENI TRANSPORT SERVICE CORP.**, in providing logistics, coordinating the shipment, planning the shipment, planning the loading/unloading and make the load made a voluntary undertaking and in doing so assumed the duty to exercise reasonable care in providing logistics, coordinating the shipment, planning the shipment, planning the loading/uloading and actually load the RTV, but failed to exercise reasonable care which caused injuries and damages to Plaintiff.  In accepting the job as provision of logistics and coordination, Defendant,  **MARUBENI TRANSPORT SERVICE CORP.**, had the responsiblithy of ensuring that the right transportation company, truck, trailer and driver were provided for the load it agreed to provide the services to or for.  Further, said Defendant had the obligation to ensure that the proper and safe equipment was provided and present to perform the shipment; however, the same was not provided for this shipment as the truck/trailer lacked the necessary equipment to safely operate the ramps to the 2nd or top transport deck within the trailer/van so that the Kubota RTV could be off-loaded safely.  The decisions made during logistics, planning, coordinating and actual loading dicated the manner in which the unloading would occur. In this regard, Defendants failed to adequately protect those who Defendants knew would be nearby, including your plaintiff.

3.20    Defendants, **MINSTAR TRANSPORT, INC.** and **RICHARD MCGOWLAN** did not load the Kubota RTV's into the Minstar trailer/van.

3.21    One or more of the Defendants **KUBOTA TRACTOR CORPORATION, KUBOTA   MANUFACTURING   OF   AMERICA   CORPORATION,   KUBOTA**

MANUFACTURING CORP., KUBOTA NORTH AMERICA CORPORATION and/or KUBOTA CORPORATION loaded the subject RTV onto the 2nd or top deck of the Minstar van/trailer.

3.22    No Defendant provided Defendant, **RICHARD MCGOWLAN**, any instruction and/or warnings regarding off-loading the Kubota RTV, the existence of the entrapment hazard in the design of the Kubota RTV's fuel accelerator pedal and/or operator's compartment and/or how to slow and/or stop the Kubota RTV if the foot became "stuck" or entrapped, as alleged by Defendant, **RICHARD MCGOWLAN**.

3.24    Prior to the incident made the basis of this litigation, Defendant, **RICHARD MCGOWLAN**, did not know that his foot could become "stuck," entrapped and/or caught by the accelerator pedal and/or operator's compartment of the Kubota RTV.

3.25    Prior to the incident made the basis of this litigation, no Defendant herein instructed or warned Defendant, **RICHARD MCGOWLAN**, what to do to stop unintended acceleration if his foot were to become "stuck" in or ensnared by the accelerator pedal and/or within the operator's compartment of the Kubota RTV.

3.26    One or more of the Defendants, **KUBOTA TRACTOR CORPORATION, KUBOTA MANUFACTURING OF AMERICA CORPORATION, KUBOTA MANUFACTURING CORP., KUBOTA NORTH AMERICA CORPORATION** and/or **KUBOTA CORPORATION**, have exercised their retained right of control over the coordination, loading, shipment, transport and/or unloading of Kubota RTV's in that they now prohibit RTV's from being unloaded from the shipping trailer by allowing the driver to drive it off the trailer.

3.27    One or more of the Defendants, **KUBOTA TRACTOR CORPORATION, KUBOTA MANUFACTURING OF AMERICA CORPORATION, KUBOTA MANUFACTURING CORP., KUBOTA NORTH AMERICA CORPORATION** and/or **KUBOTA CORPORATION** have changed their shipping and/or transportation policies by now

placing each new RTV in a crate so that it can be safely off-loaded from the trailer by a fork-lift. Said Kubota Defendants were negligent in failing to create the subject RTV, instead expecting the driver to off-load the RTV.

## 4.00   CLAIMS FOR RELIEF

4.01    All factual allegations set forth hereinabove and below are adopted into this count as though set forth herein word for word.   Plaintiffs rely upon the doctrine of Respondeat Superior as to any and all agents, servants, employees and/or representatives acting in the course and scope of the same.

### 4.02   DESIGN DEFECT AS TO KUBOTA RTV

4.021   Plaintiffs incorporate by reference to this Count their factual allegations contained within Pargraph 3.00 *et seq.* and liability allegations contained in Paragraph 4.00 *et seq.* as to these Defendants.

4.022   Your Plaintiffs would show that the Kubota RTV was dangerous anddefectively designed in that the it did not incorporate a safer alternative design, as those terms are understood in law that would have prevented and/or significantly reduced the risk of Plaintiffs' injuries and/or damages.   Defendants, **KUBOTA TRACTOR CORPORATION, KUBOTA MANUFACTURING OF AMERICA CORPORATION, KUBOTA MANUFACTURING CORP., KUBOTA NORTH AMERICA CORPORATION** and/or **KUBOTA CORPORATION** distributed a defectively designed Kubota RTV which was a producing and/or proximate result of Plaintiffs' injuries and damages.   The operator of the Kubota RTV Defendant, **CHARLES MCGOWLAN**, attempted to off-load the Kubota RTV when his foot became "stuck," entstared and/or trapped which he claims caused the Kubota RTV to accelerate in a way that he didn't intend causing him to run into and over Plaintiff and then fall to the ground causing serious inuries and damages. The design of the operator's cab, including the fuel accelerator pedal was unreasonably dangerous and defective inasmuch as it

allowed during foreeable operations the Kubota RTV to accidently or unintentionally accelerate causing the operator to lose control of the Kubota RTV causing personal injury and property damage occurred on September 19, 2016 when unintended or accidental acceleration caused Defendant, **CHARLES MCGOWLAN**, to lose control over the RTV strking and injuring Plaintiff as referenced hereinabove.  The Kubota Defendants should have incorporated into the design of the fuel accelerator pedal and operator cab components which would not have allowed the accelerator to become entangled with any portion of the operator's body, including the operator's foot, which could cause unintended acceleration or otherwise for the operator to lose control over the operation of the Kubota RTV.

       4.023  Such safer alternative designs were economically and technologically feasible at the time the Kubota RTV left the control of the Kubota Defendants  by the application of reasonable achievable scientific knowledge, which included providing a accelerator pedal which did not get stuck with or on any portion of the operator's person or body and/or providing the design of an operator's compartment which did not create pinch points between the accelerator pedal and the remaining portion of the operator's cab or compartment sufficient for the operator's foot to become "stuck," entangled, ensnared or trapped as alleged by Defendant, **CHARLES MCGOWAN**, in his Notice of Removal.

       4.024  Such defective design rendered the products unreasonably dangerous and defective for its intended and reasonably foreseeable uses, as those terms are understood in law, and was the producing cause of your Plaintiff's injuries and damages, for which damages Defendants are liable, jointly and severally, to your Plaintiff under the Doctrine of Strict Liability in Tort, Restatement of Torts, Second, Sections 402A.

     4.03    **MARKETING DEFECT AS TO KUBOTA RTV**

       4.031  laintiffs incorporate by reference to this Count their factual allegations contained within Pargraph 3.00 *et seq.* and liability allegations contained in Paragraph 4.00 *et*

*seq.* as to the the Kubota Defendants.

      4.032  Your Plaintiff would further invoke the Doctrine of Strict Liability in Tort, Restatement of Torts, Second, Section 402A and 402B, as the term is understood in law, by showing that Defendants defectively marketed the Kubota RTV by failing to warn or adequately warn or instruct as to the safe use and operation of the product, including that the operator's foot or footwear could become "stuck," entangled, entrapped and/or hung up in the fuel accelerator pedal and/or the adjacent operator's cab and/or that unintended or accidental acceleration could occur therefrom and by failing to instruct or adequately instruct how to avoid the occurrence of same.   Further, said Defendants failed to warn and/or instruct the safe manner in which to off-load the product from an elevated position or with the use of a loading/unloading ramp.  Said mismarketing was a producing and/or proximate result of Plaintiffs' injuries and damages.

      4.032  Such defective marketing rendered the product unreasonably dangerous and defective for their intended and reasonably foreseeable purposes, as those terms are understood in law, and was the producing cause of your Plaintiff's injuries and damages, for which damages Defendant is liable, jointly and severally, to the Plaintiff under the Doctrine of Strict Liability in Tort, Restatement of Torts, Second, Sections 402A.

**4.04    VOLUNTARY UNDERTAKING - §323 RESTATEMENT (SECOND) OF TORTS**

      4.041  Plaintiffs incorporate by reference to this Count their factual allegations contained within Pargraph 3.00 *et seq.* and liability allegations contained in Paragraph 4.00 *et seq.* as to the these Defendants.

      4.042  In providing logistics, coordinating the shipment, planning the shipment, planning the loading/unloading Defendants, **KUBOTA TRACTOR CORPORATION, KUBOTA MANUFACTURING OF AMERICA CORPORATION, KUBOTA MANUFACTURING CORP., KUBOTA NORTH AMERICA CORPORATION** and

14

**KUBOTA CORPORATION** and Defendant, **MARUBENI TRANSPORT SERVICE CORP.**, made a voluntary undertaking and in doing so assumed the duty to exercise reasonable care in providing logistics, coordinating the shipment, planning the shipment, planning the loading/unloading and actually load the RTV, but failed to exercise reasonable care which caused injuries and damages to Plaintiff.  Said Defendants voluntarily undertook to perform services that it knew or should know were necessary for the protection of the Plaintiff and others similarly situated, failed to exercise reasonable care in performing those services and Plaintiff relied upon the Defendants' performance and/or Defendants' performance increased the plaintiff's risk of harm. With the undertaking made by said Defendants, including the loader of the Kubota RTV, the shipper of the RTV, the payor for shipment of the RTV, the selector of the transportation method including that the Kubota RTV would be double-deck stacked owed the duty of reasonable care in performing those services, including the duty to ensure that their actions in loading the Kubota RTV on the elevated transport deck of the van did not increase the risk of harm to others whoe would be unloading the RTV or in the area where the RTV could be unloaded. As shown by the photograph in Pargraph 3.14 *supra*., stacking the Kubota RTV on top of one another within the van prohibited the operator from safely situating himself within the operator's cab in any attempted operation of the RTV.  The decisions made during logistics, planning, coordinating and actual loading dicated the manner in which the unloading would occur.  In this regard, Defendants failed to adequately protect those who Defendants knew or should have known would be nearby, including your plaintiff, which should have included a warning and/or instruction to manually move or push the RTV from the 2nd or top deck, instead of trying trying to operate or drive the unit from the 2nd or top deck.

### 4.05    NEGLIGENCE AND/OR GROSS NEGLIGENCE – ALL DEFENDANTS

4.051   Plaintiffs incorporate by reference to this Count their factual allegations contained within Pargraph 3.00 *et seq.* and liability allegations contained in Paragraph 4.00 *et*

*seq.* as to the these Defendants.   Defendants were negligent as alleged hereinabove.

4.052   In particular, it is believed that on the occasion in question, the Defendants, **KUBOTA TRACTOR CORPORATION, KUBOTA MANUFACTURING OF AMERICA CORPORATION, KUBOTA MANUFACTURING CORP., KUBOTA NORTH AMERICA CORPORATION** and **KUBOTA CORPORATION**, failed to exercise the degree of care that a reasonable and prudent business entity and/or person would have in at least the following particulars:

4.0521 In creating or designing an operator's compartment or station which "stuck," ensnared, trapped and/or hung up the operator's foot causing unintended acceleration of the Kubota RTV;

4.0522 In failing to provide an emergency "kill" or stop switch if the operator's foot became "stuck" or entrapped or hung up in the accelerator pedal;

4.0523 In failing to warn that foot entrapment could occur in the Kubota RTV;

4.0524 In failing to instruct the operator how to avoid foot entrapment;

4.0525 In failing to test or adequately test its Kubota RTV for foot entrapment that could cause unintended acceleration;

4.0526 In failing to provide a fail-safe to unintended acceleration;

4.0526 In loading the Kubota RTV on the 2nd or top level of the van/trailer;

4.0526 In choosing to "double-stack" its products for loading, shipment and/or unloading;

4.0527 In failing to ensure that all necessary parts and/or equipment necessary for the safe operation of the "Double Deck Transport System" were present and would be used to unload its products;

4.0528 In failing to investigate and/or test the Double Deck Transport System; alternatively, in failing to adequately do so.

4.0529 In introducing a dangerous and defective product into the stream of commerce by design defect, marketing defect and/or both;

4.0530 In failing to load the "first off" RTV's on the lower level;

4.0531 In failing to crate the RTV so that it could off-loaded by a fork-lift, a change Defendants have now made to their shipping and/or transportation

policies; and

4.0531 In such other and further acts and/or omissions constituting negligence as referenced herein or will be proven at the trial of this cause.

4.053   In particular, it is believed that on the occasion in question, the Defendants, **MINSTAR TRANSPORT, INC.** and its employee and agent, **RICHARD MCGOWLAN**, acting in the course and scope of employment, failed to exercise the degree of care that a reasonable and prudent business entity and/or person would have in at least the following particulars:

4.0531 In failing to keep a proper lookout for plaintiff;

4.0532 In failing to maintain control over the RTV;

4.0533 In entrapping his foot causing sudden acceleration;

4.0534 In failing to provide and/or bring all equipment for the safe operation and/or use of the transport system to the job;

4.0535 In negligently unloading the RTV;

4.0536 In shipping the RTV in a dangerous manner;

4.0537 In running Plaintiff over in the RTV;

4.0538 In marketing that its Double Deck Transport System was safe for shipping, hauling and/or unloading mobile equipment and for one-half of the cost;

4.0539 In failing to require that the RTV's be crated for shipping and transportation, which has been done since the occurrence; and

4.0539 Such other and further acts and omissions constituting negligence and gross negligence, as those terms are understood in law, as may be shown at the trial of this case.

4.054   In particular, it is believed that on the occasion in question, the Defendant, **MARUBENI TRANSPORT SERVICE CORP.,** failed to exercise the degree of care that a reasonable and prudent business entity and/or person would have in at least the following particulars:

4.0541 In In marketing that its Double Deck Transport System was safe for shipping, hauling and/or unloading mobile equipment and for one-half of the cost;

4.0542 In failing to require that before unloading RTV's transported on the 2nd or top deck, that the RTV's on the bottom level are first removed so that the 2nd or top deck can be lowered before unloading those RTV's which had been loaded on the 2nd or top deck;

4.0543 In failing to ship the "first off" RTV's on the lower level;

4.0544 In failng to adequately test and/or inspect the load of double-staked RTV's during its coordination and logistics services provided;

4.0545 In failing to ensure that all necessary ramps, blocks and equipment necessary for the safe operation and/or unloading of the 2nd or top deck of the Double Deck Transport System, when it was not;

4.0546 In providing unsafe coordination and logistics in transporation of the products sold by the

4.0547 Such other and further acts and omissions constituting negligence and gross negligence, as those terms are understood in law, as may be shown at the trial of this case.

4.055   Additionally, your Plaintiffs would show that the action and/or inactions of the Defendant as alleged hereinabove will have such a character as to indicate that it was the result of the conscience indifference to the rights, welfare and safety of your Plaintiff and others similarly situated.  Therefore, Defendants are guilty of gross negligence and/or malice for which it should be held liable in punitive and exemplary damages to your Plaintiffs in an amount as found sufficient by the trier of fact and allowed by law.

## 5.00   <u>DAMAGES</u>

5.01   As a producing and proximate result of the Defendants tortious acts, the Plaintiff, **HORACE SAVOY** sustained severe and disabling injuries to his body generally, including causing head injury, causing his head/eye/face to be cut requiring over forty (40) suture, damaging his spine and intervertebral discs, breaking both arms, hands and/or wrists, breaking his ankle, injuring his shoulder, spine and body generally.  Due to the nature and severity of their

injuries, Plaintiff has been required to seek medical treatment.  Plaintiff has been required to pay and incur liability to pay the charges which have been made for such medical services.  In the future, it is reasonably probable that Plaintiff will probably require additional medical care, treatment and procedures and will be required to pay and incur liability to pay the charges which will be made for such services.  The charges which have been made and which will be made for such services rendered to the Plaintiff has represented and will represent the usual, reasonable and customary charges for like and similar services in the vicinity where they have been and will be rendered.  All of such services, both past and future, have been and will be necessary in connection with the proper treatment of the injuries suffered by the Plaintiff as a result of the occurrence made the basis of this suit.

5.02   All of the above damages suffered by the Plaintiffs were the proximate or producing results of the acts and/or omissions of the Defendant complained of in this Petition and are in excess of the jurisdictional limits of this Court.

5.03   Your Plaintiffs have sustained compensatory damages as a producing and/or proximate cause in at least the following particulars, which are expected and in all reasonable probability will continue into the future:

5.031   Reasonable and necessary costs of medical care and treatment including doctors, hospitals, nurses, medicine, and other services and supplies in the past and future;

5.032   Loss of earnings in the past;

5.033   Loss of earning capacity;

5.034   Physical pain and suffering;

5.035   Mental anguish, not only with regard to the immediate incident as it unfolded, but also with regard to the devastating impact the incident and injures have had on his life, and that they will probably have on the remainder of his life, including the anxiety of diminished life enjoyment and freedom of movement, and the fear and anxiety associated with the various therapies, medical procedures, and treatment that will probably be necessary to properly treat the Plaintiffs; and

19

5.036   Physical impairment;

5.037   Physical disfigurement;

4.038   Loss of love, society, affection and consortium; and

4.039   Loss of Household Services.

5.04    Defendants' conduct gives rise to exemplary damages in an amount allowable by the applicable laws and statutes.

5.05    If your Plaintiff was suffering from any pre-existing disease or condition which could be said to have contributed to the injuries and damages herein alleged, they were not disabling until aggravated, excited and otherwise caused a flare-up as a natural consequence of the incident made the basis of this litigation.

**6.00   <u>RIGHT TO AMEND</u>**

6.01    Plaintiff hereby expressly reserve the right to amend their pleadings to conform to the evidence.

**7.00   <u>PRAYER</u>**

7.01    WHEREFORE, PREMISES CONSIDERED, Plaintiff requests that the Defendant be cited to appear and answer herein and that on a final trial hereof, Plaintiff have judgment against the Defendant for an amount in excess of the minimum jurisdictional limits of this Court as compensation for your Plaintiff's damages, to be determined by the trier of fact, including:

7.011   Actual damages as pleaded;

7.012   Pre-judgment and post-judgment interest in the highest amounts allowed by law;

7.013   Exemplary damages;

7.014   Costs of Court;

7.015   Such other and further relief, at law or in equity, to which Plaintiff is justly entitled.

**8.00    REQUEST FOR JURY TRIAL**

8.01    It is requested, pursuant to Federal Rules of Civil Procedure, that this matter be tried before a jury.  An appropriate jury fee has been submitted.

**9.00    REQUEST FOR DISCLOSURE AND USE OF DOCUMENTS**

9.01    Further, Plaintiff hereby places Defendant on notice that any documents marked as exhibits to depositions and/or produced by Defendant herein will be used in pre-trial and/or trial proceedings.

**10.00    DESIGNATION OF LEAD COUNSEL**

10.01    Gilbert T. Adams, III, of Gilbert Adams Law Office, is designated as the attorney in charge for the Plaintiff in all matters relating to these claims.

                              Respectfully submitted,

                              GILBERT ADAMS LAW OFFICE
                              1855 Calder Avenue at Third
                              P.O. Drawer 3688
                              Beaumont, Texas 77704
                              Phone (409) 835-3000
                              Fax (409) 832-6162

                              _____
                              **GILBERT T. ADAMS, III**
                              State Bar No. 00790201
                              gilbert@gta-law.com

                              **ATTORNEY IN CHARGE FOR PLAINTIFFS**

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing instrument has been served upon all known counsel of record in accordance with the Federal Rules of Civil Procedure on this the 24th day of April, 2017.

                              _____
                              GILBERT T. ADAMS III