**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION**

| | | |
|---|---|---|
| **HORACE SAVOY, AND WIFE,** | § | |
| **TIFFANY SAVOY** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION 1:17-CV-00126-RC** |
| | § | |
| **MINSTAR TRANSPORT, INC.,** | § | **JUDGE RON CLARK** |
| **RICHARD MCGOWLAN,** | § | |
| **KUBOTA TRACTOR** | § | **VSL** |
| **CORPORATION AND MARUBENI** | § | |
| **TRANSPORT SERVICE CORP.** | § | |

## PLAINTIFFS' MOTION TO REMAND

TO THE HONORABLE JUDGE OF THIS COURT:

COME NOW, **HORACE SAVOY, AND WIFE, TIFFANY SAVOY**, hereinafter sometimes referred to as Plaintiffs and make and file this their Motion to Remand the removal of this case by Defendants, **MINSTAR TRANSPORT, INC**. and **RICHARD MCGOWLAN** in this multi-party case from the 60th Judicial District Court of Jefferson County, Texas pursuant to 28 U.S.C.A. §1447(c) and would respectfully show the Court as follows:

**I.**
**BRIEF STATEMENT OF ACCIDENT AND PARTIES**

1.      Plaintiff, **HORACE SAVOY**, (hereafter sometimes referred to as "**SAVOY**") was injured while working at the business premises of his employer, Beaumont Tractor Company, which is an authorized dealer of Kubota products, including the subject RTV, which is a 4-wheeled Utility Vehicle designed, marketed and/or distributed by Defendant, **KUBOTA TRACTOR COMPANY** (hereafter sometimes referred to as "**KTC"**) and its related entities.   Generally, each of the Defendants had some involvement in the process of designing, marketing, loading and/or transporting a brand new Kubota RTV from the site of manufacture to the authorized distributor for resale.  A picture of the Kubota RTV loaded for shipping on the top or 2nd deck of a Minstar double-deck box van/trailer is attached as ***Exhibit A*** which also happens to show the driver (of both the

1

Minstar truck/trailer and the RTV) Defendant, **RICHARD MCGOWLAN** (hereafter sometimes referred to as "**MCGOWLAN**") standing inside the double-deck trailer immediately prior to the occurrence.  See *Exhibit A*.  Specifically, **SAVOY** was injured when he was struck by a Kubota RTV as it was being off-loaded and driven off the 2nd or top load level within a double-deck trailer/van owned by Defendant, **MINSTAR TRANSPORT, INC**., (hereafter "**MINSTAR**") running over **SAVOY** and causing him to fall to the ground causing severe and permanent injuries, including broken bones in both wrists, his ankle and injuries to his head, face, neck and low back.  At the time **SAVOY** was struck by the Kubota RTV, it was being driven by **McGOWLAN** employee of and truck driver for **MINSTAR**.  Specifically, **MINSTAR** and **MCGOWLAN** plead that **MCGOWLAN** "*having accidently gotten a foot stuck next to the throttle of an ATV when driving it off the trailer, resulting in inadvertently accelerating*" the RTV.  See Paragraph 11, Defendants' Notice of Removal by Defendants, **MINSTAR** and **MCGOWLAN**.  After running over and striking **SAVOY**, the RTV operated by **McGOWLAN** continued on out of the van/trailer and striking and damaging two other trailers and another parked RTV before coming to a stop. **MARUBENI TRANSPORT SERVICE CORP.** (hereafter sometimes referred to as "**MARUBENI**") provided **MINSTAR** and **MCGOWLAN** pursuant to a "Service Agreement" entered into between **MARUBENI** and **KTC** which required that **MARUBENI** perform and provide services to **KTC** including "*to coordinate the transportation/distribution*" of the subject RTV by "*provid[ing] special van trailers, consisting of double deck van trailers, for the transportation*" of the RTV.  See *Exhibit B*, Para 1.1, KTC-Marubeni Service Agreement.  Subsequent to the occurrence, Kubota RTVs are delivered to Plaintiff's place of employment – the Beaumont Kubota Dealership - in a crated condition so that they can be off-loaded by mechanical means instead of being driven off the double-deck trailer by the driver of the tractor/trailer.  See *Exhibit C*, picture of crated Kubota RTV taken after **SAVOY** injury.  **KTC** is the importer, marketer, shipper, payor of shipping expenses and coordinator of distribution of the RTV's or their respective parts in North America, for the designer

of the RTV, **KUBOTA CORPORATION** (hereafter sometimes referred to as "**KC**").  **KUBOTA NORTH AMERICA CORPORATION** (hereafter sometimes referred to as "**KNAC**"), **KUBUTA MANUFACTURING OF AMERICA CORP.** (hereafter sometimes referred to as "**KMAC**" and **KUBOTA MANUFACTURING CORP.** (hereafter sometimes referred to as "**KMC**") are identified on the Straight Bill of Lading, KMA Packing List or otherwise alleged to have been in the chain of design, marketing, assembly and/or distribution of the subject Kubota RTV.  See ***Exhibit D***, Straight Bill of Lading and KMA Packing List.

## II.
## SUMMARY OF ARGUMENT REQUIRING REMAND

2.     Plaintiffs who are are Texas citizens object to the removal of the above-styled action because the properly joined Defendants, **KTC** and **MARUBENI** chose not to challenge the state court's jurisdiction over them or otherwise even specially except to Plaintiffs' causes of action asserted against them in the state court action and it would be impermissible to allow the removing Defendants to do so now for purposes of manufacturing federal court diversity jurisdiction. Alternatively, no diversity of citizenship exists between Plaintiffs and all Defendants as at least two Defendants (**MARUBENI**, **KTC** and potentially more of the Kubota entities since Kubota's corporate headquarters is in Grapvine, Texas)  have had their principal place of business situated in the State of Texas, which is not in dispute.  Alternatively, the presence of either **MARUBENI** or **KTC** (and potentially other Kubota entities) as Defendants violates the statutory prohibition of removal of diversity suits if any Defendant is a citizen of the forum state in which the action is brought pursuant to 28 U.S.C.A. §1441(b).  Defendants, **KTC** and **MARUBENI, KTC**, **KNAC, KMC, KMAC** and **KC** have been properly joined as Defendants in this action, Plaintiffs deny they have "fraudulently joined" these or any parties as Defendants and the removing parties fail to meet their burden in showing by clear and convincing evidence all Texas Defendants were "fraudulently joined."  Finally and as a fourth alternative reason supporting remand, Plaintiffs assert removal was procedurally fatally defective requiring remand because all Defendants failed to provide their

written consent to removal at the time of removal, in accordance with strict compliance requirements enunciated by the Fifth Circuit.

## III.
## PROCEDURAL HISTORY

3.        Plaintiffs filed suit against **MINSTAR**, **MCGOWLAN**, **KTC** and **MARUBENI** in Jefferson County, Texas state district court on February 23, 2017 asserting casues of action for negligence and gross negligence against all Defendants which was styled as follows:   *Cause No. B-199,637; Horace Savoy, et ux vs. Minstar Transport, Inc., et al.*[1]   Defendant, **KTC**, appeared first in the case, filing its answer on or about March 21, 2017 after being property served.  See ***Exhibit E***, **KTC** Answer and Service.  Thereafter, **MARUBENI** answered the State Court litigation.  See ***Exhibit F***, **MARUBENI** Answer with a certificate of service date of March 27, 2017 and state court filing date of March 28, 2017 and Service.  On March 31, 2017 – after the appeareance of **KTC** and **MARUBENI**,   the removing Defendants **MINSTAR** and **MCGOWLAN** made their appearance and simultaneously filed their Notice of Removal.  Subsequent to removal, Plaintiffs filed their First Amended Complaint against additional Kubota entities involved in the manufacture, marketing and distribution of the RTV and asserting product liability and voluntary undertaking claims, in addition to their negligence and gross negligence after having been  granted leave by this Court.  Since, Plaintiffs filed a Motion for Leave to file Second Amended Complaint naming the designer **KC** as a Defendant after it was disclosed by counsel for **KTC** that it was actually **KC** who designed the subject RTV.

---

[1] In October, 2016, Plaintiffs filed a Rule 202 Petition to Investigate Potential Claim naming **MINSTAR** and **MCGOWLAN** as Respondents styled Cause *No. E-199,174:  In the Name of Horace Savoy, Petitioner*; however, these Defendants set upon a path then that they wanted this case in Federal Court, no matter whether the subsequent filed personal injury case involved non-diverse parties or a "state-side" Defendant.  Said Defendants refused to engage in the Rule 202 pre-suit discovery process, asserting the State Court Order was void, because it was without jurisdiction and refused to produce a single document or witness for deposition in response to Plaintiff's counsel's requests or the Court's Order authorizing the same, despite that the Texas Long Arm Statute provided for specific jurisdiction because the accident happened in Texas after **MINSTAR** and **MCGOWLAN** purposefully availed itself to Texas by accepting hire to transport the RTV to Texas.  See *Exhibit K*.  This improper removal was brought about by these Defendants because of their stubborn refusal to re-consider their initial plan in the face proper suit against non-diverse, state-side Defendants.

4.      Plaintiffs asserted in their original Petition causes of action against all Defendants, including  **KTC** and **MARUBENI** for negligence and gross negligence associated with its loading, shipping and transporting the RTV to the Plaintiff's employer in the way that it did, which is confirmed by their subsequent practices of loading RTV's into a shipping crate, eliminating the need to drive off the RTV's and allowing them to be off-loaded by mechanical means, such as a forklift which is the apparent present practice as demonstrated by the recent picture take at Plaitniff's employer's premises.   See ***Exhibit C***.

5.      Subsequent to removal, this Court granted Plaintiffs' Motion for Leave to Amend to file their First and Second Amended Complaints which asserts causes of action for negligence, gross negligence and negligent undertaking against all non-removing Defendants including **MARUBENI**, **KTC** and all newly named Defendants and also product liablity causes of action against the shipping, marketing and distributing Defendant **KTC**, as well as newly named Defendants which are entities related and/or associated with **KTC**, and include the owner , designer, assembler, manufacturer and all marketers of the subject Kubota RTV, including **KNAC**, **KMC**, **KMAC** and **KC** whom are alleged to be proper parties, not only for their role in distributing the product, but also their negligence in loading and shipping the product. See ***Exhibit G***, email of **KTC** counsel. It is undisputed that **KTC** had at all material times its principal place of business and "corporate headquarters" in Grapevine, Texas which has been judicially admitted by Movants, **MINSTAR** and **MCGOWAN**, which makes **KTC** a Texas citizen for purposes of diversity jurisdiction.   See Para. 7, Notice of Removal by Defendants **MINSTAR** and **McGOWLAN**. Consequently, no additional proof of this issue is required to be made by Plaintiffs for purposes of their Motion to Remand.  For the sake of thoroughness, Plaintiffs refer this Court to records of the Secretary of State where Defendant **KTC** has represented and identified its Corporate Address as "1000 Kubota Drive, Grapevine, TX 76051."  See ***Exhibit H***, Business Organizations Inquiry with the Texas Secretary of State as to **KTC**.  Therefore, if the removing Defendants fail in their burden

5

to prove that there is no possibility that Plaintiffs could prevail in all of the causes of action asserted against **KTC**, then there exists no diversity jurisdiction and the case should be remanded.  While the analysis is the same, Plaintiffs have also averred as to related Kubota entities that at least KNAC and maybe others were also Texas citizens and maintained their principle place of business and "corporate headquarters" at the same location at  "1000 Kubota Drive, Grapevine, TX 76504" which is also established by representations made by said entity to the Texas Secretary of State.  See ***Exhibit I***, Business Organizations Inquiry with the Texas Secretary of State as to **KNAC**. See *Pullman Co. v. Jenkins*, 305 U.S. 534, 451, 59 S.Ct. 347, 350, 83 L.Ed. 334 (1939)(when determining  whether diversity as to all parties exist, the court must consider both served, unserved and served but not yet answered Defendants); see also *Zaini v. Shell Oil Co.,* 853. F.Supp. 960, 963 (S.D.Tex.1994) (in determing diversity, service on defendants is irrelevant).  Therefore, if the removing Defendants fail in their additional burden to prove that there is "no possibility" that Plaintiffs could prevail in all of the causes of action asserted against all Kubota entities  including **KNAC**, **KMC**, **KMAC** and **KTC**, then there exists no diversity jurisdiction and the case should be remanded.

6.    Alternatively, and independent of the destruction of diversity jurisdiction by the presence as Defendants of **KTC** (and **KNAC**, **KMA**, **KMAC** and **KC**), it is also undisputed that **MARUBENI** was at all material times a citizen of the State of Texas because its principal place of business was located in Lewisville, Texas, which has been judicially admitted by the removing Defendants which makes **MARUBENI** a Texas citizen for purposes of diversity jurisdiction.  See Para. 8, Notice of Removal by Defendants **MINSTAR** and **McGOWLAN**.  Consequently, no additional proof of this issue is made or required to be made by Plaintiffs for purposes of their Motion to Remand.  Therefore, alternatively to and independent of **KTC** and  Kubuta entities, if the removing Defendants fail in their burden to prove that there is no possibility that Plaintiffs could prevail in all of the causes of action asserted against **MARUBENI** – despite its Service Agreement

6

with **KTC** - then there exists no diversity jurisdiction and the case should be remanded.

## IV.
## ARGUMENT AND AUTHORITIES

### A.  KTC  and MARUBENI did not Attack the Jurisdiction of the State Court

7.      **KTC** and **MARUBENI** have not filed a verified plea attacking the capacity in which they have been sued. *Austin Nursing Ctr. Inc. v. Lovato*, 171 S.W.3d 845, 849 (Tex.2005); see also Rule 93, Tex.R.Civ.Pro. Neither **KTC** nor **MARUBENI** have filed a plea to the jurisdiction seeking to dismiss Plaintiffs claims against any of them.   A plea to the jurisdiction challenges the Court's power to adjudicate the subject matter of a controversy.  *Heckman v. Williamson Cty*, 369 S.W.3d 137, 149 (Tex.2012).  *See also* Rule 85, Tex.R.Civ.Pro.  Finally, neither **KTC** nor **MARUBENI** did specially except to the causes of action brought against them in State.  When a Defendant claims there is no viable cause of action, it can specifically except and seek a dismissal of those causes of action.  *Friesenhahn v. Ryan*, 960 S.W.2d 656, 658 (Tex.1998). If not complained of, any alleged defect is waived.  *Id.*  See also Rules 91 and 92, Tex.R.Civ.Pro. **KTC** and **MARUBENI** made no such complaints or allegations in the State Court action prior to removal.  With this removal, Movants are stating that there is no cause of action against their co-Defendants. They are attempting to attack the peladings for **KTC** and **MARUBENI** by claiming a defect in the parties by bringing the case to federal court when both of these state-side Texas Defendants elected not to assert such complaints, even in the face of waiver.  Movants, **MINSTAR** and **McGOWLAN** should not be permitted to attack the Plaintiffs' pleadings for their state-side co-Defendants and the case should be remanded on that basis alone.  If the matter is not remanded for that reason, then the Court must remand for lack of subject matter jurisdiction.

### B.  Standard for Removal and Remand

8.      A party may remove an action to federal court only if the action is one over which the federal court has subject matter jurisdiction.  28 U.S.C. S 1441(a).  "'Federal courts are courts of limited jurisdiction.'" *Rasul v. Bush*, 542 U.S. 466, 489 (2004) (quoting *Kokkonen v.*

*Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)); *McKee v. Kansas City S. Ry. Co.*, 358 F.3d 329, 337 (5th Cir. 2004); *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). "They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree.'" *Rasul*, 542 U.S. at 489 (quoting *Kokkonen*, 511 U.S. at 377 (citations omitted)). The court "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery*, 243 F.3d at 916 (citing *Kokkonen*, 511 U.S. at 377); *see also Boone v. Citigroup, Inc.*, 416 F.3d 382, 388 (5th Cir. 2005). There is no federal question, so the only possible justification for subject matter jurisdiction is if there is complete diversity of citizenship. Plaintiff does not dispute the amount in controversy exceeds $75,000.00.

9.     There is a presumption against the existence of federal jurisdiction and "the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery*, 243 F.3d at 916. The removing party must establish "that federal jurisdiction exists and that removal was proper." *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). Court must evaluate all of the factual allegations in the plaintiff's state court pleadings in the light most favorable to the plaintiff, resolving all contested issues of substantive fact in favor of the plaintiff, [and] then examine relevant state law and resolve all uncertainties in favor of the nonremoving party." *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 259 (5th Cir. 1995) (quoting *Green v. Amerada Hess Corp.*, 707 F.2d 201, 205-06 (5th Cir. 1983)). District Courts must remand a case to state court if it appears tha the the district court at any time lacks subject matter jurisdiction. 28 U.S.C. S 1447 (c). Any doubt as to the propriety of removal jurisdiction should be construed in favor of remand. *Acuna v. Brown & Root, Inc.*, 200 F.3d 335, 339 (5th Cir.2000). On a motion for remand, the court should only consider the jurisdictional issues and should not litigate the substantive issues of the case as part of the inquiry into jurisdiction. *Green v. Amerada Hess Corp.*, 707 F. 3d 201, 204 (5th Cir. 1983). When considering a motion to

8

remand, "[t]he removing party bears the burden of showing that federal jurisdiction exists and that removal was proper." *Bourne v. Wal-mart Stores, Inc.*, 582 F.Supp.2d 829 (E.D.Tex.2008).  See also *Mangrano v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002).  This extends not only to demonstrating a jurisdictional basis for removal, but also necessary compliance with the requirements of the removal stataute." *Bourne*, 582 F.Supp.2d at 832.

10.     The Movant Defendants maintain a heavy burden for improper joinder since they have to show there is no possibility that the Plaintiffs can establish claims against the individual defendants in state Court.  *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459 (2nd Cir. 1998). In addition, this Court must resolve all disputed fact questions and ambiguities with the applicable state law in favor of the non-removing party.  *Hart v. Bayer Corp.*, 199 F.3d 239, 246-7 (5th Cir. 2000).  This Court need "not decide whether the plaintiff will actually or even probably prevail on the merits, but look only for a possibility that he may do so." *Dobson v. Spiliada Maritime Corp.*, 951 F.2d 40, 42 (5th Cir. 1992).

11.      "Since the purpose of the improper joinder inquiry is to determine whether or not the in-state defendant was properly joined, *the focus of the inquiry must be on the joinder, not the merits of the plaintiff's case*. Given this focus, we have recognized two ways to establish improper joinder: '(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court.'" (quoting *Travis v. Irby*, 326 F.3d 644, 646-47 (5th Cir.2003)). *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004). (*emphasis added*).

12.     The removing Defendants here have not alleged actual fraud with regard to the joinder of all other Defendants; so, addressing only the possibility of establishing a casue of action, the removing Defendants have the burden to demonstate "that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant". *Id*. Moreover, the removing Defendants bear the heavy burden of offering clear and convincing

evidence to establish fraudulent joinder. *Veltmann v. Crowley Maritime Corp.*, 784 F.Supp. 366, 368 (E.D. Tex. 1992); see also *Burden v. General Dynamics Corp.*, 60 F.3d 213, 215 (5th Cir. 1995). To remand, the Court needs to find only a possibility that Plaintiffs may prevail. Rodriguez v. Sabatino, 120 F.3d 589, 591. (5th Cir. 1997). To establish improper joinder "[t]he removing party must prove that there is absolutely no possibility that the plaintiff will be able to establish a cause of action against the in- state defendant in state court...." *Green v. Amerada Hess Corp.*, 707 F.2d 205. "If that possibility exists, a good faith assertion of such an expectancy in a state court is not a sham… and is not fraudulent in fact or in law." *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 550 (5th Cir.1981)(quoting *Bobby Jones Garden Apartments, Inc. v. Suleski*, 391 F.2d 172, 177 (5th Cir. 1981). In determining the existence of any possibility that Plaintiffs could prevail, no consideration is taken of affirmative defenses that Defendants might assert. *Ritchey v. Upjohn Drug Co.,* 139 F.3d 1313, 1318-19 (9th Cir. 1998). Only state-court actions that originally could have been filed in federal court may be removed to federal court by Defendant. *Bourne*, 582 F.Supp.2d at 833. Because removal raises significant federalism concerns, the removal statutes are strictly and narrowly construed, with any doubt resolved against removal and in favor of remand. *Id*.

### C. <u>There is No Complete Diversity and multiple Texas Defendants</u>

13.     There is no diversity of citizenship between Plaintiffs and all Defendants. Plaintiffs are resident citizens of Beaumont, Texas. Removing Defendants admit that multiple Defendants are resident citizens of the State of Texas, including **MARUBENI** and **KTC**. See Para 7 and 8, Defendants' Notice of Removal. Additionally, named but not yet answered Defendants **KNAC** is a resident citizens of the State of Texas. See ***Exhibit I***. Thus, the undisputed evidence is that there is no diversity between Plaintiffs and Defendants which denies this Court of subject matter jurisdiction. Accordingly, this Court should remand.

14.     Additionally, this Court is deprived of jurisdiction because it is undisputed that multiple Defendants are citizens of the State of Texas, including **KTC**, **KNAC** and **MARUBENI** making them "state-side" Defendants.  The United States Code provides that actions "shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in whch such action is brought." 28 U.S.C. § 1441(b); see also *Coury v. Prot*, 85 F.3d 244, 252 (5th Cir. 1996).  Accordinngly, this Court should Order remand.

D.   **Negligence Defendants were Properly Joined and Removing Defendants Cannot Meet Burden of Establishing by Clear and Convincing Evidence that there is "No Possibility" Plaintiffs will Recover against MARUBENI, KTC and other Kubuta Defendants in their Claims for Negligence and Gross Negligence**

15.     Independent of the product liablity duties owed by **KTC** and the Kubota entities discussed in Paragraph IV.E. below, these Defendants as well as **MARUBENI** owned Plaintiffs an independent general negligence duty of care created by their acts, omissions and responsibilities to use reasondable care in loading the RTV, which dictated and controlled the manner in which the RTV would be unloaded.   Plaintiffs have alleged a general negligence duty as a result of their negligent loading claims against these entities who loaded (or planned for, trained for, supervised for and/or who retained a right of control over the loading of the RTV on the 2nd Deck of the transport trailer)  or who shipped (or planned for, trained for, supervised for and/or who retained a right of control over the shipping of the RTV on the 2nd Deck of the transport trailer).  It is undisputed that the removing Defendants did not load the RTV.  Further, the manner in which this RTV was loaded – required by  **MARUBENI-KTC** Service Agreement - dictated and controlled the conditions, including dangerous conditions, by which it would be off-loaded from the trailer.  Plaintiffs have alleged breach of these duties which was a proximate cause of their damages.  See *Exhibit B*, Para 1.1, KTC-Marubeni Service Agreement.

16.     **MARUBENI** and **KTC** as the marketer, payor and shipper entered into a "Service Agreement" which required that **MARUBENI** perform and provide services to **KTC** including "***to coordinate the transportation/distribution***" of the subject RTV by "***provid[ing] special van***

11

**trailers, consisting of double deck van trailers, for the transportation**" of the subject RTV.  See

**Exhibit B**, Para 1.1, KTC-Marubeni Service Agreement.   Requiring a truck driver to drive these

new RTV's off the 2nd level deck – at a decline - is literally a high-wire act.  Yet, this exact high-

wire act is what is required by the **KTC-MARUBENI** Service Agreement.  See **Exhibit B**, Para

1.10.   The crated RTV – which was taken after the occurrence at Plaintiff's employer's place of

business – is a picture that tells a thousand words about the liability of both **KTC** and **MARUBENI**

who envisioned this dangerous high-wire act years before this occurrence.  See **Exhibit C**.  Those

with a right of control have now changed the manner in which the RTV is shipped – crating them so

as to prevent them from being driven off by the truck driver and rather off-loaded by forklift or

other mechanical means.

      17.     Elemental Texas tort law recognizes an independent legal duty to refrain from

injuring others:

> There are many instances in which it may be said, as a matter of law, that there is
> a duty to do something, and in others it may be said, as a matter of law, that there
> is no such duty. Using familiar illustrations, it may be said generally, on the one
> hand, that **if a party negligently creates a dangerous situation it then becomes
> his duty to do something about it to prevent injury to others if it reasonably
> appears or should appear to him that others in the exercise of their lawful
> rights may be injured thereby.**

*Torrington Co. v. Stutzman*, 46 S.W.3d 829, 837 (Tex. 2000) (emphasis added), quoting

*SmithKline Beechman*,903 S.W.2d 347, 353 (quoting *Buchanan v. Rose*, 138 Tex. 390, 159

S.W.2d 109, 110 (Tex. 1942)).  Plaintiffs have alleged **MARUBENI**, **KTC** and the other Kubota

Defendants breached these duties relative to the loading and shipping of the RTV, in light that

their loading and shipment planning for same dictated the manner in which would be off-loaded.

      18.     Texas case law supports **SAVOY's** claims against all of those who are

participated in the planning, coordination, supervision, control of and actual loading of the RTV.

It is alleged that **MARUBENI**, **KTC**, **KNAC** and/or related Kubota Defendants negligently

loaded for shipment and transportation the RTV on the 2nd or top deck of the Minstar trailer/van and it was foreseeable to said loading Defendants that injury could be caused during off-loading.[2]  Numerous Texas cases impose liability on such a negligent loader, whose negligence in loading contributed to cause an accident or injuries:

1)   Plaintiff was injured while off-loading lumber on trailer which was loaded by the lumber company in a different State, 140 miles away from the site of the accident. Plaintiff sued loading lumber company alleging unsafe loading of lumber because it failed to band the lumber.  The Fifth Circuit Court of Appeals reversed and remanded after the trial court improperly granted judgment in favor of lumber company.   In remanding for trial, **the Fifth Circuit held that any negligence of the lumber company was in creating the danger by failing to band the timbers during loading and to conduct its business in a manner not harmful to others**.  *Gray v. Martindale Lumber Co.*, 527 F.2d 1352 (5th Cir.1976) (emphasis supplied)

2)   Plaintiff worker sued for injuries when bale of cotton fell on him during course of off-loading.  Court of Appeals reversed and remanded for new trial after trial court granted instructed verdict in favor of negligent loader of cotton bale holding: "…it seems to us apparent that either by wedging or bracing or other practicable and feasible means baled cotton can and should be loaded into freight cars so as not to create an imminently lethal condition such as that described…**And we think all such loading should be done in the exercise of care to anticipate any and all reasonably forseeable causes which might tend to create such imminently dangerous condition…**"  *Texas Employers Insurance Association v. Texas Compress Company*, 284 S.W.2d 922 (Tex.Civ.App-Galveston 1955, writ refused n.r.e) (emphasis supplied)

3)   Wrongful death beneficiaries sued loader of pipe who failed to safely secure the load with adequately sized cribbing.  After Defendant loader finished loading and cribbing the pipe, Decedent attempted to throw a chain over the pipe and the pipe rolled off the trailer and onto Decedent killing him. Court of Appeals affirmed judgment in favor of wrongful death beneficiaries against loader of pipe.  *Atlas Truck Lines, Inc. v. Bachelor*, 639 S.W.2d 329 (Tex.Civ.App.—Texarkana 1982, writ dism'd).

4)   Nearby motorist was injured when driver of beer truck/trailer lost control and rolled over onto it allegedly due to negligence in loading beer truck's trailer by not properly securing the load.  Court of Appeals reversed summary judgment in favor of alleged negligent loader and remanded case to trial holding that fact issue was raised as to whether accident was proximately cause [negligent loader] in loading the beer truck's trailer.  *Dewbre v. Anheuser-Busch, Inc.*, 2008 WL 5093385 (Tex.App.-Texarkana 2011, writ denied).

---

[2] This allegation was included and fairly noticed in Plaintiffs' Original Petition filed in the 60th Judicial District Court as to **KTC** and **MARUBENI**.

In light of these cases, it is incredulous to even argue that there is "no possibility" **SAVOY** will prevail in their claims against **MARUBENI**, **KTC** and other entities who planned, coordinated, controlled or participated in the loading of the subject RTV and removing Defendants should voluntarily stiopulate to remand without further delay or imposition on this Court.

19.     The source of duty is addressed in numerous Restatement (Second) of Torts provisions.  For instance, the Restatement (Second) of Torts, §§ 323, 324A (1965), also approved and adopted in numerous Texas cases including *Torrington,* recognize an independent duty to use reasonable care when a person undertakes to provide services, either gratuitously or for compensation. *Id.* at 837, *citing*, *Fort Bend County Drainage Dist. v. Sbrusch*, 818 S.W.2d 392, 396 (Tex. 1991); *Colonial Sav. Ass'n v. Taylor*, 544 S.W.2d 116, 120 (Tex. 1976). "One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if (a) his failure to exercise such care increases the risk of such harm, or (b) the harm is suffered because of the other's reliance upon the undertaking. *Colonial Sav. Ass'n v. Taylor*, 544 S.W.2d 116,120 (Tex. 1976).   The **KTC-MARUBENI** Service Agreement constitutes a voluntary undertaking by **KTC**, **MARUBENI** and any other Kubota entity involved in the loading of the RTV.

20.     By voluntarily undertaking to coordinate, plan, provide logistics and actually load the RTV, **MARUBENI** and **KTC** assumed such an independent duty of care to Plaintiff to exercise reasonably care commensurate with the undertaking. *Torrington* at 837.  The manner in which the RTV was loaded for transport dictated the manner in which the RTV could be unloaded and those undertaking Defendants had a duty to exercise reasonably care that the RTV's could be safely off-loaded under all reasonably foreseeable circumstances.  Certainly, these entities knew where it would be unloaded, by whom and that they had not made provision

14

for mechanical unloading or lifting the newly assembled RTV off of the 2ⁿᵈ or top deck or out of the trailer.  These Defendants could reasonably foresee that driving the RTV off of the top deck was dangerous and that it did not allow the operator to correctly "man" the operator's compartment and controls.  Because these RTV's were new transported for sale at exclusive dealerships, these Defendants could forsee that **SAVOY** or someone similarly situated would be nearby and that injury could occur if control was not maintained over the RTV; hence the duty exists.

21.     Plaintiffs claims of negligence and gross negligence against the "supplier" of this RTV find further support in yet another provision of the Restatement.  Section 392 of the Restatement (Second) of Torts, entitled "Chattel Dangerous for Intended Use," provides as follows:

> One who supplies directly or through a third person a chattel to be used in the supplier's business purposes is subject to liablity to those for whose use the chattel supplied, _or to those whom he should expect to be endangered by its probable use_, for physical harm caused by the use of the chattel in the manner for which and by person for whose use the chattel is supplied.

Applying Section 392 to the facts of this case:   **KTC** supplied the RTV for use by **MCGOWLAN** for the purpose of off-loading at authorized dealerships where it knew the RTV would sold or re-sold (i.e., the supplier's business purposes).   Per the Service Agreement, **KTC** intended the RTV would be off-loaded by truck driver at heights and on a decline and knew the truck driver could not properly occupy the operator's cab due to height restriction created by inside roof of the trailer, substantially increasing the risk of loss of control.  **KTC** "should expect" anyone in the vicinity to be endangered by the probably use of RTV by the truck driver who cannot properly fit in and safely assume the controls of the operator's compartment, including dealership employees in the vicinity while these products are delivered. According to Section 392 of the Restatement (Second) of Torts, **KTC** is liable to **SAVOY**.

22.     Too it is elemental Texas law that one who retains or exercises a right of control

over an injury producing event, has a duty commensurate with that control to exercise reasonable care so that others are not injured.  This right of control over the planning and coordination for loading and transport cannot be more evident than what has occurred since the occurrence – now these new Kubota RTV's are crated in preparation for shipment so that they may be unloaded by mechanical means as demonstrated by the attached photograph taken after the occurrence of a crated Kubota RTV transported to Plaintiff's place of employment.  See ***Exhibit C***, photograph of crated Kubota RTV.  None of the Defendants have as of yet admitted who required this change of practice; however, it can be presumed the trucking company and its driver – the removing Defendants – did not require this change.  Why did those with a right of control over the planning and coordination of shipment not implement these changes before the injuries to **SAVOY**?  It cannot reasonably be believed that **SAVOY** has "no possibility" of recovering on their claims against the party or parties requiring, controlling and/or implementing this change of practice.  The reasons for making this safety existed prior to the occurrence and those with the right of control over this shipping decision should have made the change to crate the RTV's and prohibit this high-wire driving act by a truck driver who likely hasn't read the operator's manual as he is ready to drop his load and head home. It is not a reasonable assertion to make to this Court that there exists by clear and convincing evidence there is "no possibility" Plaintiffs will recover against these Defendants.

23.     Removing Defendants seem to acknowledge that a duty by the loader of this RTV to exercise reasonable care exists (simultaneous acknowledging removing Defendants did not load the RTV), but seems to argue that "unstrap[ing], turn[ing] it on" and subsequent operation of the RTV were superceding and/or new and independent causes, which are affirmative defenses under Texas law.  See para 10, Defendants' Notice of Removal.  However, in determining the existence of any possibility that Plaintiffs could prevail, no consideration is taken of affirmative defenses that Defendants might assert.  *Ritchey v. Upjohn Drug Co.,* 139

16

F.3d 1313, 1318-19 (9th Cir. 1998).  Besides, it could be expected the same or similar arguments were made in those cases cited in Pargraph 21 above, which were obviously rejected by those Courts.  Because the removing parties cannot meet their burden in establishing by clear and convincing evidence that there is "no possibility" Plaintiffs will prevail on their claims of negligence and gross negligence against **MARUBENI**, **KTC** and the remaining Kubota Defendants involved in the loading and shipment of the RTV, this Court should remand.

### E. Product Liablity Defendants were Properly Joined and Removing Defendants Cannot Meet Burden of Showing "No Possibility" Plaintiffs will Recover against KTC and other Kubota Defendants for Product Liability Claims

24.     Because it is admitted that complete diversity of citizenship does not exist and there exists two state-side Defendants in **KTC** and **MARUBENI**, removing Defendants have alleged "fraudulent joinder" as the sole basis for its removal, which is vehemently denied by Plaintiffs. Removing Defendants assert that the citizenship of **KTC** and **MARUBENI** should be disregarded because they were fraudulently joined, which is vehemently denied.  Under Texas law, "Plaintiffs in strict liability cases are given the right to sue any party in the stream of commerce–even 'innocent sellers'. *Oasis Oil Corp. v. Koch Refining Co.*, 60 S.W.3d 248, 253 (Tex. App.–Corpus Christi 2001, pet. denied).  Plaintiffs have alleged the RTV was unreasonably dangerous by design and mismarketed pursuant to §402A Restatement (Second) of Torts, which is generally followed by Texas.  **McGOWLAN** admits the injuries and subsequently collision because he "***having accidently gotten a foot stuck next to the throttle of an ATV when driving it off the trailer, resulting in inadvertently accelerating***" the RTV and losing control.  See Paragraph 11, Defendants' Notice of Removal by Defendants, **MINSTAR** and **MCGOWLAN.**  Specifically, Plaintiffs have alleged design and/or marketing defects contributed to cause **McGOWLAN** to get his foot "stuck", ensnared or entrapped in the accelerator which caused the sudden and the RTV to go out of control striking and running over **SAVOY**, and thereafter continued to travel in an uncontrolled manner into two other trailers and another RTV.  Plaintiffs alleged the RTV was

designed, marketed and/or otherwise placed into the stream of commerce by **KTC**, **KNAC**, **KC** and other entities identified on the Parts List and Straight Bill of Lading.  See ***Exhibit D***.

25.     Under Texas law, a product manufacturer (and any entity in the chain of distribution) has a duty to eliminate or reduce the risk of dangerously designed motor vehicles while including safer alternative designs, warn of the exisence hazards and instruct how to avoid the hazards or otherwise respond in damages for harm caused.   A design which allows the operator's foot to become "stuck", ensnared, entrapped and/or caught in or near an accelerator causing the operator to lose control over the vehicle is a dangerous design and safer alternative designs exist to eliminate or reduce the risk of the same.   This is what is alleged by the operator **McGOWLAN** who lost control over the RTV striking and running over Plaintiff, before hitting three other objects when the unintended accelerated RTV finally came to a rest.  A multitude of safer alternative designs exist including kill switches, more spacious operator cabs, including more room in and near the accelerator, Stuck throttle/accelerator or sudden acceleration is not a new or novel case or theory of liablity.   Indeed, a non-exhaustive, cursory thirty (30) minute search on Westlaw of Texas cases revealed the following previous litigation dating back to 1913 regarding "stuck" throttles/accelerators and/or sudden acceleration alleged and/or proven to cause loss of control and injury or damage:

1)   *Texas & Pacific Coal Co. v. Chaote*, 159 S.W.1058 (Tex.Civ.App-Fort Worth 1913, no writ) – on job injury - appeal of judgment on jury verdict awarding damages as a result of steam engine malfunction from "stuck throttle" resulting in fall of manbasket causing injuries.

2)   *Henderson v. Ford Motor Co.*, 519 S.W.87 (Tex.1974)  - Judgment entered on jury verdict against product manufacturer.  Plaintiff alleged that accelerator stuck as a result of design defect, which was producing cause of collision and resulting injuries.

3)   *Gammill v. Jack Williams Chevrolet, Inc.*, 972 S.W.2d 713 (Tex.1998) – Plaintiff injured in collision when accelerator pedal became caught in wiring harness beneath the dashboard.   Summary judgment affirmed based on expert qualification deficiencies.

4) *Nissan Motor Company Ltd v. Armstrong*, 145 S.W.3d 131 (Tex.2004)(appeal by manufacturer on evidentiary point following judgment entered on jury's verdict in favor of owner of a Nissan who was injured due to sudden acceleration and/or "stuck throttle" and brought products liablity action against manufactuer.   In response to number of incidents, Nissan recalled the vehicle and installed an interlock causing claims of unintended acceleration to drop dramatically);

5) *In re: Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices and Products Liablity Litigation*, 704 F. Supp.2d 1379, MDL NO. 2151 (2010) – fraudulent concealment and failure to warn in unintended acceleration case which was resolved by settlement agreement between the parties and approved by the Court;

6) *Mikuni Corp. v. Foster* – 2012 WL 170603 (Tex.App.-Houston [1st. Dist] 2012 – motorcycle manufacturer sued because throttle became stuck causing operator to fall backwards.  Dismissed on procedureal grounds;

7) *Billy Fitts v. Melissa Richards-Smith*, et al, 2016 WL 626220 (Tex.App.— Texarkana 2016, no writ). Settlement with Toyota and injured party's deposition in "stuck acceleration" case against Toyota, how Toyota went faster and faster, despite pressing the brake pedal and the collision causing injuries.

26.     Intertwined with each of the above cases involving allegations or actual findings of product defect for stuck throttle/accelerator and/or sudden acceleration, are claims of marketing defect for failing to warn or instruct of the existence of or how to avoid the danger as the duty for same rests solely with the manufacturer of the product.   In this case, Plaintiffs have alleged the product contained inadequate warnings or instructions to users of the RTV, including **McGOWLAN**, that his foot could become stuck or ensnared in the accelerator, how to avoid the same or in the event it occurred, instructions describing how to regain control over the product.

27.     Other than the removing parties assertion that **McGOWLAN's** foot becoming "stuck" in or near the accelerator of the RTV is not a products liability case, the removing parties provide no specific evidence in support of their assertions that Plaintiffs product liability claims are without merit.  While this revelation first occurred to Plaintiffs in the Notice of Removal filed on March 28, 2017, had removing Defendants not opposed the Rule 202 Petition to Investigate filed against removing Defendants and participated in providing the requested documents and depositions, this explanation of **MCGOWLAN's** foot-entrapment-in-accelerator causing sudden

acceleration and loss of control would have been learned at then and the product liability causes of action would have been asserted in Plaintiffs' Original Petition filed in State Court (in addition to the negligent loading allegations asserted in said Original Petition). Regardless, removing Defendants have failed to carry their burden to establish there is "no possibility" **SAVOY** can recover on their negligence claims against **MARUBENI** <u>and</u> negligence and product liablity claims against **KTC, KNAC** and those Kubota Defendants distributing the Kubota RTV which ensnared **MCGOWLAN's** foot causing a "stuck" throttle and unintended acceleration.  Because there is at least ***"arguably a reasonable basis for predicting that state law might impose liablity"*** on the Texas Defendants for negligence, design and/or marketing defect, removal is inappropriate. *Bourne*, 582 F.Supp at 835.  Because the removing Defendants have failed to carry their burden, this Court should remand.

### F. <u>Fatal Procedural Defects  – No Written Consent to Removal by all Defendants at time of Removal</u>

28.    The removing Defendants also bear the burden to establish that necessary compliance with the requirements of the removal statute.  *Bourne*, 582 F.Supp.2d at 832.  The non-removing Defendants, **MARUBENI** and **KTC** failed to provide the requisite written consent to removal <u>at the time of removal</u> in violation of the Federal Courts Jurisdiction and Venue Clarification Act of 2011, H.R. 394, P.L. 112-63 (hereafter "the Act").  **MARUBENI**, who served its Answer <u>before</u> **MINSTAR** and **MCGOWLAN** filed its Notice of Removal, with a certificate of service dated March 27, 2017 and filing date of March 28, 2017. See ***Exhibits F*** establishing date of service and answer of **MARUBENI**.   The Act codified the century-old rule of unanimity for cases involving multiple Defendants adopted in *Chicago, Rock Island & Pac. Ry. v. Martin*, 178 U.S. 245 (1900).  By these authorities, all defendants must join in or consent to the notice of removal in writing.   As admitted in the email exchange between removing Defendants and counsel for KTC, the deadline for removal was March 31, 2017.   Because **MARUBENI** did not timely consent in writing to removal at the time of removal, the removal was fatally defective and this Court should

remand.

29.     Further, contrary to the "vouching rule" which may be permissible in the Sixth or Ninth Circuits, the Fifth Circuit has adopted an "independent-and-unambiguous consent requirement" requiring all defendants to individually and in writing express their own consent to the Court.  For example, in *Getty Oil Corp. v. Insurance Co. of North America*, the Fifth Circuit ruled that pursuant to §1446(a), one defendant could not adequately claim in his notice of removal that "another defendant do[es] not oppose and consent[s] to [the]…Petition for Removal.  841 F.2d 1254, 1262 (5th Cir. 1988).  Instead the Court held that each defendant must individually provide timely, written consent to the removal.  *Id*., at 1262.  "There must be some timely filed written document from each served Defendant, or its authorized representative, indicating that the Defendant has consented to removal."  *West v. 3M Co.*, 2006 WL 287973 (S.D.Tex.Feb. 6, 2006). "It is insufficient for a defendant who has not signed the removal petition to merely advise the removing defendant that it consents to removal and that the removing defendant may represent such consent to the Court on its behalf."  *Edelman v. Page*, 535 F.Supp.2d 290, 292 (D.Conn.Jan. 31, 2008).  For these reasons, the removing Defendants belated filing on April 10, 2017 as to **MARUBENI** fails to comply with 5th Circuit requirements and is fatally defective to removal. Consequently, this Court should remand.

30.     As such, not only has **MARUBENI** not timely consented in writing to removal, but **KTC** has not timely or properly expressed its written consent to removal.  In their Notice of Removal, it is the removing Defendants have purported to act for **KTC** or so-called "vouching;" however, according to Fifth Circuit authorties including *Getty Oil*, *West* and *Edelman*, it is not sufficient or adequate that one Defendant or Defendants "vouch for" another defendant or conversely make a grant of authority to express written consent or "vouch for" itself.  In support of their pleading, the removing Defendants attach their email exchange with counsel for **KTC** which merely discusses  an inadequate form of *conditional* grant of authority, which seems almost to be an

21

attempted-but-never-consummated purchase or a form of Mary Carter agreement.  See *Exhibit G*, email exchange between counsel for **KTC** and counsel for **MINSTAR** and **MCGOWLAN**.  What the **KTC** lawyer is saying is only "upon making those corrections, *and with the assurance from your client* that Kubota Tractor Corporation neither did nor fail [sic] to do any act that proximately or caused the incident or injuries in question….."  There has been no timely showing that this "assurance" or condition was ever met or made by the removing defendants, which amounts to no timely grant of authority even if such a "vouch" were permitted by *Getty Oil*, *West* and *Edelman*.  In fact, the record remains clear there has been no admission of liablity by the removing Defendants for causing the occurrence. Because **KTC** has not timely consented to removal in writing, this Court should remand.

## V.  ATTORNEYS FEES PURSUANT TO 1446(C)

31.     Considering the stubborn refusal to reconsider their plan to remove the case to federal court and clear impropriety and fatal procedural defects of the removal of this case, removing Defendants opposition to pre-suit discovery, election not to participate in pre-suit discovery, non-removing Defendants (**KTC** and **MARUBENI**) election not to attack the case against them in State Court as well as removing defendants' failure to obtain proper written consent for removal from **MARUBENI** and **KTC**, Plaintiffs seek reasonable attorneys fees and expenses. The delay this stubborn effort to get to federal court have caused a waste of time and judicial resources.  It will likely set the case back 4, 6, 8 months or more which is extremely problematic, especially in light of **KC's** apparent insistence for service per the Hague Convention.  Plaintiffs have called upon removing parties to declare their lack of opposition to their Motion for Remand. Plaintiffs continue to request removing parties immediately abate the harm continued to be caused by the delay visited by this removal and consent to remand without the necessity of the Court investing time and resources.  Reasonable litigants should be required to re-consider and re-evaluate their initial plan in the face of facts and parties precluding federal court jurisdiction.  Such has not

been demonstrated in this case, but only stubborn opposition to the facts giving rise to causes of action against state-side Defendants.   Plaintiffs have incurred attorneys fees and expenses in preparing, filing and tending to this removal and remand motion.   Pursuant to 28 U.S.C. 1446(c), Plaintiffs requests reasonable expenses and attorneys fees incurred for this remand, which at this time exceed $3,200.00.   See **Exhbit J**, Affidavit of Plaintiffs' counsel, Gilbert T. Adams, III. Making the Savoy Plaintiffs whole relative to this improper removal will serve an equally important purpose of deterring  others similarly situated from filing similar motions in U.S. District Court which unnecessarily drains the Court's resources, results in delay – often to the removing party's advantage – and increases the expenses of not only Plaintiffs, but also the non-removing and/or non-consenting Co-Defendant(s).

## VI.  ALTERNATIVE RELIEF SOUGHT

32.     While Plaintiffs firmly believe this matter is ripe for remand, in the event the Court is unable to make a ruling based on the current status, Plaintiffs respectfully request, only in the alternative to a denial of the remand, that they be allowed to perform discovery and take the depositions of some of the Defendants, including **McGOWLAN**, **MARUBENI** and **KTC** to obtain additional evidence in support of the request for remand.   Trial courts have the "authority" and "duty" to make the necessary inquiries to establish whether jurisdiction is proper.   *Unified 2020 Realty Partner, L.P. v. Proxim Wireless Corp*., 2011 U.S.Dist. LEXIS 72465, *1; 2011 WL 2650199 (N.D.Tex.2011) (citing, *Foret v. S. Farm Bureau Life Ins. Co.*, 918 F.2d 534, 537  (5th Cir. 1990); *Opelika Nursing Home, Inc. v. Richardson*, 448 F.2d 658, 667 (5th Cir.1971)).   In an action that has been removed to federal court, a district court is required to remand the case to state court if, at any time before final judgment, it determines that it lacks subject matter jurisdiction.   *Bourne v. Wal-mart Stores, Inc.*, 582 F.Supp.2d 829 (E.D.Tex.2008).

## XX.  CONCLUSION

33.      Removal was improper and remand should be granted based on any one or all of the following grounds:

1) Diversity of jurisdiction does not exist between Plaintiffs and Defendants, including **MARUBENI**, **KTC** and **KNAC**; **-OR-**

2) The presence of Defendants **MARUBENI, KTC**, and **KNAC** as Defendants violates the statutory prohibition of removal of diversity suits if any Defendant is a citizen of the forum state in which the action is brought pursuant to 28 U.S.C.A. §1441(b); **-OR-**

3) **KTC** and **MARUBENI** did not attack the State Court's jurisdiction, even in the face waiver and expedited dismissal rules – the removing Defendants should not be permitted to attack state court's jurisdiction for them by alleging fraudulent joinder; **-OR-**

4) Removing Defendants failed to their burden to establish by clear and convincing evidence there there is "no possibility" that Plaintffs will prevail in their negligence or voluntary undertaking causes of action against **MARUBENI**; **-OR-**

5) Removing Defendants failed to their burden to establish by clear and convincing evidence there there is "no possibility" that Plaintffs will prevail in their  products liablity causes of action against **KTC** any the other Kubota Defendants; **-OR-**

6) Removivgn Defendants failed in their burden to establish removal was procedurally correct, including a failure to establish **MARUBENI** and **KTC** provided timely written consent for removal in violation of the century-old Unanimity Rule and Federal Court Jursdiction and Venue Clarification Act of 2011 and strict enforcement by the Fifth Ciruit's "independent-and-unambiguous consent" requirement.

## <u>PRAYER</u>

WHEREFORE, PREMISES CONSIDERED, Plaintiffs request this Motion to Remand be GRANTED, seek an award of reasonable attorneys fees and expenses, request this Court to direct the clerk to remand and return this case to the 60th Judicial District Court of Jefferson County, Texas, and in the alternative, an order allowing them to depose **McGOWLAN, MARUBENI** and **KTC** and allowing them to supplement their remand after such discovery is obtained and for such other and further relief, both general and special, in law or at equity as Plaintiffs show themselves justly entitled.

Respectfully submitted,

GILBERT ADAMS LAW OFFICE
1855 Calder Avenue at Third
P.O. Drawer 3688
Beaumont, Texas 77704
Phone (409) 835-3000
Fax (409) 832-6162

_____
**GILBERT T. ADAMS, III**
State Bar No. 00790201
gilbert@gta-law.com

**ATTORNEY-IN-CHARGE FOR PLAINTIFFS,
HORACE AND TIFFANY SAVOY**


### CERTIFICATE OF CONFERENCE

I HEREBY CERTIFY that I have attempted to confer with opposing counsel in effort to determine whether they are opposed or unopposed to the filing of this Motion by writing them an email requesting same. As of the filing of this Motion the undersigned has heard only from one counsel registering their opposition.

_____
GILBERT T. ADAMS III


### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing instrument has been served upon all known counsel of record in accordance with the Federal Rules of Civil Procedure on this the 28th day of April, 2017.

_____
GILBERT T. ADAMS III